## GREGORY FOSDICK *against* THE NORWICH MARINE INSURANCE COMPANY.

An interest in the vessel and cargo, gives an interest in the profits of the voyage, which may be the subject of insurance.

*A.* insured 6,000 dollars, as profits on a cargo, at and from *Bordeaux* to the *West Indies*. At the time of effecting the insurance, *A.* represented to the insurers, that he had received advice from his correspondent at *Bordeaux*, of the vessel's arrival there, and of the state of the market, and that it was expected a cargo would be obtained, worth from 20,000 to 25,000 dollars. The vessel actually sailed with a cargo worth but 9,251 dollars. Held, there was no misrepresentation.

In case of an insurance upon profits, and a total loss, no abandonment is necessary.

CASE stated.

This was an action on a policy of insurance. The defendants pleaded *non assumpsit*. A verdict was found for the plaintiffs, for 6,502 dollars, subject to the opinion of the court, on the following case:

The plaintiffs assured, at the *Norwich Marine Insurance Company*, six thousand dollars, as profits on the cargo of the brig *Celia*, valued as insured, at and from *Bordeaux* to *St. Bartholomew* and *Guadaloupe*, or either of them; warranted against average or partial loss; and in case of total loss, proof that the property belonged to citizens of the *United States*, to be made in the *United States*. A policy was duly executed on the 22d day of *May*, 1804. At the time of effecting the insurance, the plaintiffs represented to the defendants that they had received advice from their correspondent, at *Bordeaux*, of the arrival of the *Celia* at that port, and of the state of the market; and that it was expected a cargo would be obtained, worth from 20,000 to 25,000 dollars. The plaintiffs shipped on board the *Celia*, at *Bordeaux*, a cargo of wine, oil, soap, and dry goods, valued at 9,251 dollars, being the avails of the outward cargo. The plaintiffs were citizens of the *United States*, owners of the vessel and cargo. The vessel was furnished with all the necessary papers and documents, for a neutral and *American* vessel, and sailed from *Bordeaux* on the first of *June*, 1804, for *St. Bartholomew* and *Guadaloupe*, *Bradford Taber*, a citizen of the *United States*, being master; and on her voyage was captured by his *Britannic* majesty's ship of war the *Hippomenes*, on the first day of *July* following; and on the same day carried into the island of *Antigua*; of which the plaintiffs gave notice, and made proof to the *Insurance Company* on the 26th day of *October*, 1804, and offered to the secretary of the company to abandon; to which the secretary replied, that he deemed no abandonment necessary; but if it should afterwards be found to be necessary, the abandonment should be considered as having been made at that time. The question for the opinion of the court is, whether the plaintiffs are entitled to recover? If so, the verdict to stand; if not, a nonsuit to be entered.

June, 1808.

FOSDICK v. NORWICH MAR. INS. COMPANY.

*Robbins*, for the plaintiffs. This case presents three questions:

1. Whether the profits of the voyage were an insurable interest?

2. Whether the representation made at the time of effecting the insurance was false, so as to avoid the policy?

3. Whether there was a sufficient abandonment?

1. The only objection that can be raised against an insurance of this description, is, that profits, having no actual existence at the time of the insurance, and depending on a variety of contingent events, cannot be ascertained with any reasonable degree of certainty; and, therefore, such a contract, respecting them, must have the effect of a wager. Such a doubt can only arise by supposing a similarity between a contract of this nature, and an insurance of property *interest or no interest*, which is made void by the statute 19 *Geo.* II. c. 37. It may be allowed, that such an insurance would be held equally void here, as it would under this statute in *England;* because our laws lean most strongly against gambling transactions in any shape. But we apprehend that profits, in reasonable expectancy, form an interest which may well be insured, notwithstanding this statute, and notwithstanding our laws are decidedly opposed to every species of wagering contracts. The common law, indeed, goes much further to support insurances, than is necessary to our case; for it is now well settled, that before the statute of *Geo.* II. a person might have insured without interest. 8 *Term Rep.* 23. Since that statute, the practice of insuring on future profits has been continued; and is justified by the case of *Grant* v. *Parkinson*, which was an insurance on the profits of a

cargo, valued at 1,000*l.* "without any other voucher than the policy." In this case, no doubt was entertained that the assured had a sufficient interest; though Lord *Mansfield*, at first, thought that the words "without any other voucher than the policy," would bring it within the statute; but this opinion he afterwards changed, and judgment was given for the person insured. *Marsh.* 111. *Park*, 267. The same principle has been recognised in many subsequent cases; and very fully in *Barclay* v. *Cousins*, 2 *East*, 544.; and must be considered as establishing the doctrine that profits, *eo nomine*, are insurable. Here the court held, that though insurance is a contract to indemnify the insured, yet that indemnity is not to be considered as only for the loss of property which had been in actual possession; but might reasonably be extended to secure the avails of a voyage; as it is "not an improper encouragement of trade to provide that merchants, in case of adverse fortune, should not only not lose the principal adventure, but that that principal should not, in consequence of such bad fortune, be totally unproductive: and it is but playing with words to say, that in such case there is no loss, because there is no possession."(a) It will avail nothing to say, that in such case the interest of the insured cannot be proved, because the profits may be greater or less, or none at all, according to the existing state of the market; for, as in all cases of valued policies, it is sufficient to prove such an interest as shows merely that no evasion was intended, so where profits are insured, it is unnecessary to make actual proof, that in case of safe return, the insured would have realized profits to the full amount of the policy, but only that the particular circumstances of the case, or the general state of the market, would justify an expectation of profit to such an amount as would show the transaction not to be merely deceptive,

(a) See 2 *East*, 547.

June, 1808.

FOSDICK v. NORWICH MAR. INS. COMPANY.

or entered into with a view to a fraudulent loss. *Lewis* v. *Rucker*, 2 *Burr.* 1167. Neither this idea, nor the principle that profits are insurable, is in the least opposed by the decision of *Hodgson* v. *Glover*, 6 *East*, 316. That case was directly within the statute; it being expressed that *no other proof of interest was to be required than the policy.* No question was made, as to the insurability of profits; on the contrary, the counsel for the defendant declared, that he did not mean to dispute, since the case of *Barclay* v. *Cousins*, that the profits of trade were insurable; so that the doctrine was explicitly assented to.

2. The next point is, as to the representation made by the plaintiffs. The objection is, that the plaintiffs obtained insurance to the amount of 6,000 dollars, by declaring that they expected to procure a cargo of much greater value than that which was actually received; and that it was impossible such profits could be realized on this last. The representation itself appears to have been precisely true, as it contained no assertion of facts, but made the defendants acquainted only with the information which the plaintiffs had received from their correspondent at *Bordeaux*. If this information finally proved to be incorrect, it is of no consequence; for the plaintiffs cannot be answerable for the false opinions or expectations of their correspondent. But the representation, whether true or false, was wholly immaterial to the risk, and could only affect the amount of interest. That the plaintiffs had such an interest in the ship and cargo as would afford good reason to expect *some* profit from the voyage is not to be denied. What the probable amount of profit would be, they could only judge from knowing the markets at *Bordeaux*, and the value and description of the return cargo. For this they must depend on the information of their correspondent. Such information on this subject as they had, they fairly sub-

June, 1808.

FOSDICK v. NORWICH MAR. INS. COMPANY.

mitted to the insurers. If their calculation was extravagant, the defendants might have made a better for themselves. The whole transaction shows that it was an error of opinion, a disappointment of expectation, which is never evidence of a material misrepresentation.(a) The fairness of the transaction may be tested by a question similar to that put by Lord *Mansfield* in the case of *Pawson* v. *Watson*, *Cowp.* 789. Did the expected value of the cargo induce the defendants to underwrite the policy? If it did, they would have said, put it into the policy; warrant that the ship shall leave *Bordeaux* with a cargo worth 25,000 dollars. "There is no fraud in it, because it is a representation only of what, in the then state of things, they thought would be the truth." The defendants here acquiesced in the plaintiff's belief, by not requiring other information, and a particular warranty, and so have assumed the risk of its correctness. But it does not appear that the calculation was ill founded; since, for the probable value of the return cargo they must trust to the information of their correspondent; and if this had proved to be correct, the sum insured could not have been unreasonable.

3. The remaining point is, respecting the abandonment. This is not essential, where there is an absolute destruction of the property insured. In such case, the insurer becomes immediately liable for the whole amount insured, without a formal abandonment; which would be but a vain ceremony when nothing is left to abandon. Here the *profits* of the voyage must be considered as totally destroyed by the capture and detention of the ship, so that a formal abandonment was not necessary. The insured need not, however, in any case, abandon, and claim for a total loss. If he do not abandon, he will only recover according to the loss actually

(a) *Marshall*, 336.

June, 1808.

Fosdick v. Norwich Mar. Ins. Company.

sustained. There has, however, in this case, been an actual abandonment; for the secretary, to whom it was made, is the accredited agent of the company; or, at least, the organ of communication with the corporation. An abandonment to him is, therefore, sufficient.

*Dana* and *Goddard*, for the defendants.

1. It cannot be pretended that, because a wager contract of insurance may be said to have been good at common law, and to be void, in *England*, only under the statute of *Geo.* II., therefore, such a contract may be supported in this state; for here no action can be maintained on any wagering contract, whether entered into by way of insurance, or in any other mode that may be devised; such contracts being wholly repugnant to the policy of our laws. The object of insurance is to indemnify the party insured against the hazard to which his property is exposed. It is apparent, that such a contract may be easily perverted to mischievous purposes. So, indeed, has been the fact; and much vigilance ought to be used to diminish the opportunities of abuse, or, at least, to prevent their increase. A powerful means of effecting this object is, to make the safety, rather than the loss of the property, conducive to the interest of the party insured. The abuses which arose from insurances without interest, gave occasion to the statute before mentioned; but if the design of this statute and the policy of our laws may be evaded by a substitution of different terms, or insuring a sum considerably beyond the value of the property, abuses may occur to such an extent as to render them unavailing. The objection to an insurance of profits is, that they have no actual existence; that they are only in expectancy, and may never be realized. So that there may be the same temptation to fraud which there is in insurances without interest. Cases, indeed, may exist, in which the

June, 1808.

FOSDICK v. NORWICH MAR. INS. COMPANY.

probability of profit, in case of safe arrival, is so strong as to constitute an interest which may afford a reasonable ground of insurance, as connected with the ship and cargo. Such was the case of *Grant* v. *Parkinson*, in which the plaintiff had made such a contract with the government as to exclude every contingency of market, and render the profits certain on the arrival of the ship. So, where the course of trade is well understood, and not liable to fluctuation, the calculation of profit may be reduced to a kind of certainty, as in the case of *Barclay* v. *Cousins*. But all this amounts only to an insurance of what the goods shall be worth on their arrival at the port of delivery, and is very different from an expectation of profit, depending on a constantly fluctuating market. The same is true of an insurance of freight, the amount of which is ascertained by the contract itself, and may be demanded of the freighter in virtue of the contract. In such cases, there is always a rule by which the loss may be computed on an open policy. But profits depending merely on the state of the market, if insurable at all, can be so only by a *valued* policy, which "will open a new door to the evasion of the statute 19 *Geo.* II."(a) The opinion of *Marshall* seems to be, clearly, that profits, *eo nomine*. are not insurable; the object of insurance being, as he observes, "not to make a positive gain, but to avert a possible loss." And no case can be found which goes the length of establishing the doctrine that loss arising from the state of the market merely, is a subject of insurance. In *Grant* v. *Parkinson*, the interest *proved* at the trial was the profit, *to the amount of the sum insured.* The insurance, however, was on the ship and cargo; property in actual existence; and the profits, as was said by Lord *Mansfield*, were "pretty certain," and were connected with the property insured. But this question

(a) *Marshall*, 79.

June, 1808.

Fosdick v. Norwich Mar. Ins. Company.

has been settled, in *England*, in the late case of *Hodgson* v. *Glover;* which was an insurance on the profits of a voyage, valued at the sum insured, without further proof of interest than the policy. The objections were, that this last provision brought the case within the statute; and that there was no proof that profits would have been realized. Lord *Ellenborough* said, that "at all events the objection is decisive, that the plaintiff does not show that he has sustained a loss by the perils of the sea. He does not show that if there had been no shipwreck, and the slaves had all got to a market, any profits would have been produced. It should have been shown that but for the peril insured against, which happened, there would have been profit upon the adventure." Here it does not appear, that had the vessel arrived safely at her port of delivery in the *West Indies*, any profits would have been produced; therefore, upon the authority of *Hodgson* v. *Glover*, there can be no recovery. This case is of later date than that of *Barclay* v. *Cousins*, to which it is, in some degree, opposed. But even that cannot be said to have established the principle that profits, independently of the thing from which they are to arise, are insurable; or that, in case of an insurance on profits, there can be a recovery without proof of such a state of the market, as to afford "a pretty certain" expectation of profits; which is, at all events, indispensable.

2. Any misrepresentation of a fact material to enable the insurers to estimate the risk, is sufficient to avoid the policy.(a) This representation need not be wilfully made, with a preconceived design to deceive the insurer. For although the insured does not know the representation to be false, it will still be fatal, if it be material to enable the insured "to make his calculations, and ap-

(a) *Marshall*, 334, 335.

June, 1808.

FOSDICK v. NORWICH MAR. INS. COMPANY.

preciate the risk." On the representation of the party applying to be insured, two questions are always to be decided: shall insurance be made? and on what terms? These must depend upon the circumstances attending the particular case; not only the hazard of capture and shipwreck, but the probability there may be of want of due care in the master and mariners, and the temptation on the part of the insured to effect a fraudulent loss. This is a circumstance which, if known to the insurer, would always occasion an increase of premium, if not a refusal to assume the risk; for insurers will not calculate their policies so as to make it for the interest of the insured to act unfairly; but on the contrary, they would choose that the insured should be interested to promote the safety of the voyage, as this affords a security for attention and care. In this case, it may well be supposed, that had the insurers known, that instead of a cargo worth 25,000 dollars, the ship would have sailed with one worth but 9,000, they would not have taken a risk on the profits to the amount of 6,000 dollars, for the same premium. The information respecting the value of the cargo was, therefore, material; and although not known to be false, yet in fact being so, it is sufficient to vitiate the policy.

3. An abandonment, in this case, was necessary, because there was not an absolute literal destruction of the ship and cargo; but a possibility remained of their recovery;(a) and of profit still arising from the voyage. The abandonment, however, which it is pretended was made in this case to the secretary of the company, is not sufficient. The insurers are an incorporated company, who act only by their president and directors; and the abandonment should have been made to them. If it is said that no abandonment is necessary, as there was

(a) *Park*, 82. 143. *Marshall*, *passim*. 1 *T. R.* 310. 613. 2 *Root*, 404.

June, 1808.

Fosdick v. Norwich Mar. Ins. Company.

nothing to abandon, the same reason will overthrow the plaintiffs' right of action; because if there was nothing to abandon, there could have been nothing to insure.

By the Court. An interest in the vessel and cargo gives an interest in the profits of the voyage. Such an interest in the expected profits is an insurable interest.

The misrepresentation, or suppression, of material facts will vitiate a policy of insurance. But in the present case, the expectation of profits, and the facts on which that expectation was grounded, appear to have been truly stated. There was no misrepresentation.

An abandonment to the agent, is an abandonment to the insurers. But the capture of this vessel, under the circumstances of the case, amounted to a total loss of the profits insured, and no abandonment was necessary.

Judgment to be entered for the plaintiffs.