This case was again tried (see Watson v. Insurance Co. of North America [Case No. 17,284]), and turned upon the question of seaworthiness. Upon the opening, the plaintiffs' counsel read the survey and condemnation at Gibraltar, after stating to the jury that he did so merely to show that a survey and condemnation had taken place, but not as evidence of any fact stated in it. The defendants, since the last trial, obtained and gave in evidence the deposition of one of the surveyors, which stated the case in respect to the unsoundness of the vessel at Gibraltar, very unfavourably to the plaintiffs. To meet this evidence, the plaintiffs offered the deposition of the captain, to contradict the statements of the surveyor, and to impeach his credit. This was objected to, on the ground that the plaintiffs, having read the report of this very surveyor, had made it their evidence, which they could not afterwards impeach.

29 FED. CAS.—28

[For opinion on the question reserved, see Case No. 17,286.]

## Case No. 17,286.

WATSON et al. v. INSURANCE CO. OF NORTH AMERICA.

[3 Wash. C. C. 1.] [1]

Circuit Court, D. Pennsylvania. April Term, 1811.

MARINE INSURANCE—ACTION ON POLICY—DAMAGES —BOTTOMRY BOND—VALUED POLICY.

1. The plaintiffs insured $12,000 on the Anna Maria, from Cadiz to Antwerp, by a valued policy; and the vessel having put into Gibraltar in distress. the captain executed a bottomry bond, which was dated a few days before the policy was made. The jury found the real value of the Anna Maria to be $15,000, and left to the court the question, whether the amount of the bottomry bond should be deducted from the agreed value in the policy, or the real value. The court held, that the deduction should be made from the real value, as found by the jury.

[Cited in Force v. Providence Washington Ins. Co., 35 Fed. 771; The Fern Holme. 46 Fed. 124; O'Brien v. Miller, 67 Fed. 612.]

2. A valued policy is in general conclusive, both as to the value of the property, and of the interest that valuation is sufficient to cover: the agreed value being a fixed standard, by which to ascertain the measure of the promised indemnity; but this ceases to be obligatory, if from any circumstances it fails to afford such standard—as where the loss is partial, or the property has, by fraud or accident. been greatly overrated.

3. Difference between the form of policies of insurance in the United States and in England. as to double insurances.

The only question reserved by the jury for the opinion of the court, was, whether the amount of a bottomry bond, executed by the captain, without the knowledge of the plaintiff, beyond sea, a few days before this policy was made, is to be deducted from the 12,000 dollars, the agreed value in the policy, or from the 15,000 dollars, the real value found by the jury?

[For prior proceedings, see Cases Nos. 17,284 and 17,285.]

WASHINGTON, Circuit Justice. The object of the insured, as well as of the under-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

writer, is indemnity against loss to the value of the interest of the former in the subject insured. The value of this interest may be agreed by the parties, or if not so, the insured must prove it. This agreement is in general conclusive between the parties to the policy, not of the value of the property at risk, but of the interest which that valuation is sufficient to cover; for the owner may insure different portions of his entire interest with different sets of underwriters, and may after all leave a residuum, of which he stands himself the insurer.

The agreed value being intended, by both parties, to fix a just standard by which to ascertain the measure of the promised indemnity, it of course ceases to be obligatory, if, from any circumstance, it fails to furnish such standard. This happens in every instance where only a partial loss has happened, or where the property has been greatly overvalued. But it is not because of fraud in the overvaluation, that the policy is opened; for if it happen by accident, as by a part only of an expected cargo being put at risk, the insurer is not bound by the agreed value. A double insurance does not necessarily imply an over-insurance, because the aggregate of the sums subscribed may fall short of the real value; and according to the custom of merchants in England, the loss is to be made up proportionally by the different sets of underwriters: but the form of the policies of this city, and probably of most of the cities of the United States, has prescribed a different rule; and it is believed, that by a fair construction of the contract which creates this rule, the present question may be decided.

The agreement is, that if any prior assurance of the same property has been made, the assurers in this policy shall be answerable, only, for so much as the amount of such prior assurance may be deficient towards fully covering the premises insured. Here, the existence of a prior insurance is presumed and admitted; and the second insurer binds himself to make good any deficiency in the first policy towards a full indemnification, so far as his subscription goes. True, it may be said, the second insurer promises a full indemnification, but the measure of that indemnity is the value agreed by the parties, where such an agreement is made. But how can this possibly be? The insured most unqestionably intends to secure an indemnity to the amount stipulated in the second policy, in addition to that secured by the first; and the second insurer, by admitting the possible existence of a prior policy, consents to fulfil that intention, so far as it may be necessary to cover the property insured to the extent of his subscription. But, notwithstanding this, the rule contended for by the defendants in this case, is calculated to deprive the assured of his expected indemnity, by so much as the sum first insured amounts to, should it be less than the value agreed in the second policy—and to render the second policy absolutely null and void, in case the sum first insured should exceed the sum so agreed in the second policy: that is to say, the second insurer is to be understood as declaring, that although his whole subscription may be necessary, in addition to the sum first insured, fully to indemnify the insured, and therefore he pledges himself to that extent, still he will not go to that extent, and in fact will not pay a farthing, if the insured is entitled to receive from the first underwriter a greater sum than the value agreed upon between them, however inadequate that may be to cover the property insured. If ever a rule was contended for, which more palpably violates the obvious and declared intention of both parties to a contract, it is not now recollected by the court. But it may be asked, why does the insured agree upon the value of the interest at risk, where he has previously insured the same property, unless it is his intention to be governed by that value? The answer is, that a prior insurance may have been effected abroad, and still more probably, a bottomry bond given, without his certainly knowing the fact. It is as probable that a loss may be partial as total, and yet he agrees to the value, although he knows that in the former case the value will stand for nothing. In the present case, it is agreed that the plaintiffs were ignorant of this bottomry bond, which accounts for the form in which this insurance was made.

Upon the whole, it is the opinion of the court, that the clause in the policy which has been stated and examined, amounts to an agreement to open the policy, in case a bottomry bond has been given, or a prior insurance made; and that the amount of the bottomry bond, or of a prior insurance, is to be taken out of the real value.