MICHAEL CARR, Respondent, *v.* THE SECURITY INSURANCE COMPANY, Appellant.

THE SAME, Respondent, *v.* THE PROVIDENCE WASHINGTON INSURANCE COMPANY, Appellant.

*It seems* that where a policy of insurance upon a vessel is against " actual total loss only," if she is afloat, or it is practicable to put her afloat, and if she is capable of being repaired at any expense, it is not a total loss within the meaning and intent of the policy.

Where, however, the underwriters, after refusing to accept an abandonment, took possession of a stranded vessel under authority conferred by a "rescue clause" in such a policy and contracted with a wrecking company to get her off and deliver her at a port named, which contract the company performed, and, upon failure of the underwriters to pay the salvage expenses agreed upon, libeled the vessel, which was sold under a decree in admiralty in that proceeding; *held*, that the underwriters had thereby made the loss to the insured an " actual total loss," whatever may have been its original character, and so the insurers were liable; that they were not bound to rescue the vessel, but having undertaken to do so, they were bound to restore her to the insured if they succeeded in saving her; and this, although the policy authorized the insurers to interfere and save the vessel, and gave a lien in their favor for all expenses incurred.

(Submitted April 17, 1888; decided June 5, 1888.)

APPEAL from judgments of the General Term of the Supreme Court, in the fifth judicial department, entered upon orders made October 24, 1885, which affirmed judgments in favor of plaintiff, entered upon reports of a referee. Reported below, 38 Hun, 86.)

These actions were brought upon policies of marine insurance issued by the defendants, respectively, upon plaintiff's schooner Alida.

The material facts are stated in the opinion.

*Benjamin H. Williams* for appellant. The indorsement "against actual total loss only," written in the policy, controls and supersedes any printed portion of the policy, if any there be, inconsistent with these words. (*Harper* v. *N. Y. C. Ins. Co.*, 22 N. Y. 444; *Harper* v. *Albany Ins. Co.*, 17 id. 98; *Woodruff* v. *Com. Ins. Co.*, 2 Hilt. 122; *Robertson* v. *French*, 4 East, 130; *Burt* v. *Brewers M. M. Ins.*, *Co.*, 9 Hun, 334; *Leeds* v. *Mechanics' Ins. Co.*, 8 N. Y. 351.) The policy being "against actual total loss only," no cause of action existed unless there was "an actual total loss" of the subject insured. (*Burt* v. *Brewers & M. Ins. Co.*, 78 N. Y. 400; 9 Hun, 333; *Murray* v. *Hatch*, 6 Mass. 465; *Buchanan* v. *Ocean Ins. Co.*, 6 Cow. 331; *Nelson* v. *Columbian Ins. Co.*, 3 Caines, 108; *Young* v. *Pacific Ins. Co.*, 34 N. Y. S. Ct. 321; *Robertson* v. *Commonwealth Ins. Co.*, 3 Sum. 220; *Greely* v. *Tremont Ins. Co.*, 9 Cush. 415; 2 Parsons on Marine Ins., 103; *De Peyster* v. *Sun Ins. Co.*, 19 N. Y. 272; *Maggrath* v. *Church*, 1 Caines, 196; *Thompson* v. *Royal Exchange Insurance Co.*, 16 East, 214; *Chadsey* v. *Guion*, 97 N. Y. 333; *Murray* v. *Hatch*, 6 Mass. 465; Park on Insurance, 114; *Salters* v. *Ocean Ins. Co.*, 14 Johns. 138; *Le Roy* v. *Governeur*, 1 Johns. Cas. 226; *Moreau* v. *U. S. Ins. Co.*, 1 Wheat. 219; *Wadsworth* v. *Pacific Ins. Co.*, 4 Wend. 33; *Heebner* v. *Eagle Ins. Co.*, 10 Gray, 131; *Wallerstein* v. *Columbian Ins. Co.*, 44 N. Y. 204; *Globe Ins. Co.* v. *Sherlock*, 25 Ohio, 67; *Walker* v. *Protection Ins. Co.*, 29 Maine, 317; *Pope* v. *Nickerson*, 3 Story, 490; *Bromfield* v. *Southern Ins. Co.*, 5 Exch. 192; *Bryan* v. *N. Y. Ins. Co.*, 25 Wend. 617; *Evans* v. *Columbian Ins. Co.*, 44 N. Y. 146.) The plaintiff was liable to pay the expense of rescue, and his loss, by reason of the sale of said vessel, occurred in consequence

of the failure on his part to perform and keep his agreement to pay such expenditures. (*Humphreys* v. *Union Ins. Co.*, 3 Mason, 437; *Greely* v. *Tremont Ins. Co.*, 9 Cush. 415; *Thomas* v. *Rockland Ins. Co.*, 40 Me. 116.) If the plaintiff can recover at all, the balance unpaid on the Starkey mortgage ought to be deducted from the amount of such recovery, and the referee erred in refusing to make such deduction. (*Ennis* v. *Harmony Fire Ins. Co.*, 3 Bosw. 516; *Grosvenor* v. *Atlantic Ins. Co.*, 5 Duer, 517; *Cone* v. *Niagara Ins. Co.*, 60 N. Y. 619; *Frink* v. *Hampdon Ins. Co.*, 45 Barb. 384; *Ripley* v. *Astor Ins. Co.*, 17 How. Pr. 444; *Clinton* v. *Hope Ins. Co.*, 45 N. Y. 454; *Dakin* v. *Liverpool, London & Globe Ins. Co.*, 13 Hun, 122; *Osterhoudt* v. *Board of Supervisors*, 98 N. Y. 244.)

*L. W. Thayer* for respondent. If Starkey were entitled to the whole fund, the action is still properly brought in the name of Carr, the party to the contract. (Code, § 449; *Lasher* v. *N. W. Ins. Co.*, 18 Hun, 98; *Orvin* v. *Farmers' Joint Stock Ins. Co.*, 57 Barb. 518; *Brown* v. *Cheeney*, 38 How. Pr. 352; *Minturn* v. *Main*, 7 N. Y. 220; *Cummins* v. *Barkelow*, 4 Keyes, 524; *Walsh* v. *Washington Mar. Ins. Co.*, 32 N. Y. 427.) Plaintiff was entitled to recover the entire amount as shown by the policies. (*Noe* v. *Christee*, 51 N. Y. 270; *Clarke* v. *Tilcombe*, 42 Barb. 122; *Field* v. *Mayor, etc.*, 6 N. Y. 188; *Green* v. *Clark*; 12 id. 606.) There was an actual total loss, both at law as well as in fact. To constitute such a loss it is not necessary there should be a physical destruction of the thing insured. It is enough that its value to the owner for the purpose it was created is destroyed. (Park on Ins. [6th ed.] 155; 2 Arnould on Ins. 1022; *Leroy* v. *Governeur*, 1 Johns. Cas. 226; *Byron* v. *N. Y. Ins. Co.*, 25 Wend. 617; *Evans* v. *Columbian Ins. Co.*, 44 N. Y. 146; *De Peyster* v. *Sun Mut. Ins. Co.*, 19 id. 272; *Wallerstein* v. *Columbian Ins. Co.*, 44 id. 203; *McCall* v. *Sun Mut. Ins. Co.*, 66 id. 505; *Robinson* v. *Atlantic Ins. Co.*, 68 id. 192.) If the defendant took posses-

sion of the wreck under the abandonment as an actual loss,. and then removed it to Detroit, not for the purpose of repairing and restoring it to the owner, but, as stated by its agent, for the purpose of escaping its liability for such loss, it was not only an admission that the loss was absolutely total, but was itself a cheat and fraud, of which the defendants cannot avail themselves of in a court of justice. (*Peal* v. *Suffolk Ins. Co.*, 7 Pick. 254; *Reynolds* v. *Ocean Ins. Co.*, 1 Metc. 160; 22 Pick. 191; *Copelin* v. *Phœnix Ins. Co.*, 2 Am. R. 504; *Norton* v. *Lexington F., L. & Ins. Co.*, 16 Ill. 235.)

ANDREWS, J. The insurance on the Almeda was against "actual total loss only." In the month of November, 1877, the vessel was stranded at Port Glasgow, on Lake Erie. The plaintiff, owner and master of the vessel, gave immediate notice of the disaster to the agents of the underwriters at Buffalo. They sent one McKenna as their agent to Port Glasgow, who, after examining the wreck, directed the plaintiff to remove the rigging and whatever he could to the land.

The plaintiff, in his evidence, described the situation of the vessel and the efforts he made to rescue her. He said: "When the vessel struck the beach we went on broadside; her plankshire and her keelsons were crushed, and she humped up in the middle about three feet; her center-board box was all started; the head ledges of the center-board box were started; the rudder was unshipped and washed away; she was all started in the transom, all started loose; she filled with water up to the level of the lake. I remained with her forty-eight hours to do what I could to save her, and every man I had aboard worked to the last minute. I then left her and came to Buffalo. I left the mate in charge of the vessel. Served a notice on the insurance agent of the loss." The plaintiff further testified that McKenna said "the vessel was not worth getting off; that he was working for the insurance company, and he should have to get her off if he only took a piece of her to Detroit; that she was insured for a total loss, and it would not be a total loss if he got a piece of her off." On the.

·8th of November, 1877, the plaintiff served written notice of ·abandonment on the underwriters, but they refused to accept an abandonment, but determined to make an effort to save the vessel. They thereupon bargained with a company of wreckers and agreed to pay them $2,500, on condition that they got the vessel off and delivered her at Buffalo or Detroit, but if they failed they were to receive nothing. The wrecking company succeeded in getting off the vessel and towing her to Detroit, and on reaching Detroit she sunk near the shore in shallow water. In January, 1878, the underwriters not having paid the salvage expenses, the vessel was libeled by the wrecking company for the $2,500, and in the same month was sold by the marshal under a decree in admiralty in that proceeding, at public sale, for the sum of $675, which, as the proof tends to show, and as the referee finds, was her full and fair value at that time. The purchaser afterwards fitted her up as a barge at an expense of from ten to fifteen hundred dollars, and she was in use as a barge for some years afterwards. The evidence also tends to show that the cost of repairing the damage to the vessel caused by the disaster would have exceeded her value when repaired. The plaintiff was not a party to the contract with the wrecking company. It was exclusively a contract between the underwriters and that company, made by the underwriters on their own account for the purpose of rescuing the vessel and thereby preventing an actual total loss under the policy. The plaintiff had no notice of the contract or of the proceedings in admiralty. The underwriters did not tender the vessel to the plaintiff, or offer to restore her, nor is it claimed that they demanded of the plaintiff reimbursement for the salvage expenses. The rigging and other articles taken from the vessel were taken to Buffalo, and were also sold under process in the admiralty proceedings.

The question whether, under the circumstances proved, there was an actual total loss of the Almeda, within the policy, has been argued with great ability by the respective counsel. There can, we suppose, be no doubt that there may be an actual

total loss of a vessel within the true meaning of that phrase in a policy of insurance, although the vessel remains in specie, or, in other words, there may be an actual total loss according to the law of marine insurance, although the vessel is in existence as such when the loss is claimed. "Actual total loss" does not imply in all cases the actual physical destruction of the thing insured. The case of hostile capture or condemnation, or where a ship is justifiably sold by the master from a necessity springing from a peril within the policy, are illustrations. In these cases the ship remains in specie, but is irretrievably lost to the owner, and this is considered as constituting an actual total loss which renders the insurer liable without abandonment. (Benecke on Mar. Ins., 336 ; 2 Par. on Mar. Ins., 74, 86, and cases cited.) It is insisted on the part of the plaintiff that the same principle applies to a case where the vessel has sustained damage from a peril within the policy, which although not destroying its character or identity as a vessel, nevertheless has injured it to such an extent that the cost of repairs will exceed the value of the vessel when repaired. There is no legal distinction, it is claimed, between the total loss of the thing and a total loss of the value of the thing, and that in the one case as well as in the other there is as to the insured an actual total loss within the fair meaning of the policy. We are not prepared to assent to this construction of the contract. We have not been referred to any authority which supports it. The general rule as to what constitutes the total loss of a ship is stated by SEWALL, J. in the case of *Murray* v. *Hatch* (6 Mass. 465). He says : "If the ship is afloat, or if it is practicable to put her afloat, and if she is capable of being repaired at any expense, it is not a total loss within the meaning and intent of the policy." The cases in this state, in respect to memorandum articles, where the insurer is liable only for an actual total loss, in the main, sustain the view that total loss in value of memorandum articles, so long as they remain in specie, is not an actual total loss of such articles within a policy of marine insurance. (*Maggrath* v. *Church*, 1 Caines, 196 ; *Le Roy* v. *Gouverneur*,

1 Johns. Cas. 226; *Wadsworth* v. *Pacific Ins. Co.*, 4 Wend. 33; *De Peyster* v. *Sun Mutual Ins. Co.*, 19 N. Y. 273; but see *Wallerstein* v. *Columbian Ins. Co.*, 44 N. Y. 204.) The case of *Burt* v. *Brewers, etc., Insurance Company* (78 N. Y. 400) was a case of insurance on a ship against "actual total loss" only. The question of what constitutes an actual total loss of a vessel, within the law of marine insurance, was elaborately considered in the opinion of TALCOTT, J., delivered at General Term, and the authorities were reviewed. The judgment was affirmed in this court substantially upon the opinion of the General Term. We have referred to the question here for the purpose of showing that there is much doubt, at least, of the correctness of the proposition urged by the counsel for the plaintiff, that an insurance on a vessel against "actual total loss only," covers the case of a total loss of value, although the ship remains in the form of a ship, capable of being repaired at some cost, and is not placed by sale or otherwise beyond the power of the insured to procure her arrival. But we are of opinion that the judgment in this case should be affirmed, for the reason that the underwriters permitted the vessel to be sold upon a lien created by themselves, after they had taken possession of the vessel under the authority conferred by the policy, whereby the title was irrevocably lost to the plaintiff without fault on his part. The policy provides that the underwriters, in case of loss or misfortune, may "interfere and save the vessel, and that in case the insurance was against total loss only, and no claim for the same was sustained, then the whole of such expenditure and the amount paid or incurred by the insurers should be a lien upon the vessel and recoverable against the vessel or the insured, at the option of the insurers." The underwriters, under the policy, had an undoubted right to save and restore the vessel, and thereby render it certain that there was no total loss under the policy. The clause quoted entitled them, if, acting in good faith, they succeeded in rescuing the vessel, to reimbursement for their expenses, either out of the vessel or from the

insured. The defendants refused to accept an abandonment, as they had a right to do. They denied that there was an actual total loss, as claimed by the plaintiff, and what they did in the way of rescuing and saving the vessel was to demonstrate the fact as claimed by them. The underwriters having elected to take possession of the vessel under the rescue clause, it is plain, we think, that they could neither sell the vessel voluntarily, nor permit it to be sold under judicial process, in satisfaction of a lien which they had created, without thereby making the loss to the plaintiff an "actual total loss," whatever may have been its original character. The sale under the decree in admiralty divested irrevocably the title of the plaintiff to the vessel. He was in no default. The policy authorized a lien in favor of the insurers for their reimbursement. But they created a lien in favor of the wrecking company, and without notice to the plaintiff, or calling on him for reimbursement, permitted the vessel to be sold to satisfy it. We think the underwriters are, and ought to be, precluded from insisting that the vessel was lost by the sale, and not by the sea peril. If the vessel had sunk in the middle of the lake, when in tow of the tug on the way to Detroit, could the insurers have insisted that she was not an actual total loss within the policy, because she was not totally destroyed when lying at Port Glasgow, before the insurers took possession. The insurers were not bound to rescue the vessel, but having undertaken to do so, they were bound to restore her to the plaintiff if they succeeded in saving her. They have not restored her, and now cannot do it.

The point that the mortgagee of the vessel should have been made a party was not taken by demurrer or answer, and was, therefore, waived. (Code, § 499.) The contract was made with the plaintiff. He had an interest as owner of the property in the collection and application of the insurance money. The one year limitation in the policy has attached so that an action could not now be maintained by the mortgagee in his own name. The plaintiff was a proper party and

will hold the proceeds of the policy for the benefit of the mortgagee, if the latter is equitably entitled to them.

We think the judgment should be affirmed.

All concur.

Judgment affirmed.