SAMUEL SCHUYLER AND OTHERS, APPELLANTS, *v.* THE PHŒNIX INSURANCE COMPANY OF BROOKLYN, NEW YORK, RESPONDENT.

*Insurance company selling an insured and injured vessel — presumption of acceptance of abandonment, how disproved.*

Where an underwriter proceeds to sell a vessel, even with an express protest against acceptance, and with a declaration that he does it for the benefit of the owners, his acts conclusively bind him as to his liability under the policy and his acceptance of the abandonment of the property insured; but this rule does not apply to a case where, by the express terms of the policy, the insurance company is required to take possession, and where the policy provides: " Nor shall the acts of the insurers or their agents in recovering, saving or disposing of the property hereby insured be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any liability under this policy, but such acts shall be considered as done for the benefit of all concerned without prejudice to the rights of either party."

APPEAL by the plaintiffs from a judgment, entered in the Albany county clerk's office on the 21st day of February, 1889, dismissing the plaintiffs' complaint upon the merits, with costs to the defendant.

*Worthington Frothingham,* for the appellants.

*Clinton, Clark & Ingram,* for the respondent.

MAYHAM, J. :

The plaintiff in his complaint seeks to recover on two causes of action set out and alleged therein. First upon a policy of insurance whereby defendant insured the plaintiff in the sum of $4,200, against such perils of navigation in the Erie canal and Hudson river upon a cargo of corn, as might arise between the 19th of November, 1887, and the conclusion of the voyage mentioned in such policy, which was being shipped on the canal-boat, H. D. Taft, alleging a loss on said policy, and charging a liability upon the defendant therefor. The second cause of action charged, in substance, the policy as in the first count a loss, and a conversion of the cargo by the defendants. The answer contained substantially the following :

*First.* That the policy does not insure against damage by ice, and that the damage was done by ice.

*Second.* That the risk terminated under the policy upon the day of the official closing of the canal, which occurred on the day of the loss.

*Third.* That under the policy damage occasioned by want of ordinary care and skill is excepted from the risk, and that the loss was occasioned by want of ordinary care and skill.

*Fourth.* Justifies taking possession of the cargo under the terms of the policy.

*Fifth.* By denials, puts in issue the other allegations of the complaint.

The issue was tried by a referee, who by his report directed judgment dismissing the plaintiff's complaint, and from the judgment entered upon that report the plaintiff appeals.

The judgment-roll and the exceptions appearing therein constitute the appeal book on this appeal, no case and exceptions having been made herein. This court on the appeal must, therefore, assume that the facts are correctly found by the referee; and if the conclusions of law are supported by the facts found, then the judgment must be affirmed. (*Gardiner et al.* v. *Schwab et al.*, 110 N. Y., 650; *Tomlinson* v. *The Mayor*, etc., 44 id., 601; *Burrows* v. *Dickinson*, 22 N. E. Rep., 569.)

The referee found as facts that the plaintiffs were the owners of a cargo of 8,000 bushels of corn, shipped from Buffalo on the canal-boat H. D. Taft, on the Erie canal bound for Albany.

That on the 19th of November, 1887, the defendant, a duly incorporated insurance company, wrote its policy on such cargo, insuring the plaintiffs on said cargo "in the sum of $4,200 against the adventures and perils of the seas, canals, rivers and fires, and all other perils, losses or misfortunes that should come or happen to the hurt, detriment or damage of the said cargo on the voyage or trip aforesaid, excepting perils, losses and misfortunes arising from or caused by ice, or from a want of ordinary care and skill (such as is common in said navigation) in lading or navigating said boat."

The referee further found "that it was also provided, in and by said certificate and policy of insurance, that, in case of loss or misfortune, it should be the duty of the captain and crew of said boat, or those having command, to use the utmost diligence and attention to save the property until some agent of the defendant should arrive,

and upon his arrival to assist him in the care and saving of the property; and that neglect so to do should render said policy void; that there could be no abandonment of the subject insured, and that the acts of the insurers or their agents in recovering, saving or disposing of the property insured thereby should not be considered as a waiver or acceptance of an abandonment; or as affirming or denying any liability under said policy, but that such acts should be considered as done for the benefit of all concerned, without prejudice to the rights of either party."

The referee also found that the policy " did not cover any damage from ice; and that if the voyage should be suspended or interrupted in consequence of ice for three consecutive days or more the trip risk should cease and terminate at and from twelve o'clock at noon of the day the boat should be stopped by ice; and that in case the navigation of the canal should, during the trip, be closed officially while the boat should be on the canal, the risk under said policy should cease on the day the canal should be thus closed; that three days next succeeding such stoppage and closing should be allowed to discharge cargo, but that any resumption of the voyage during the same season, or the spring following, should not revive the risk nor restore the liability of the defendant under said policy."

The referee also found " that the defendant, in and by said policy and certificate, undertook and agreed to make good and satisfy unto the said insured all such loss or damage on said cargo so laden as aforesaid, not exceeding in amount the sum insured thereon, as should happen or arise from any of the aforesaid causes or casualties, not excepted as aforesaid, and to pay the same within sixty days after notice, and proof of the loss and interest therein should be made by the insured."

The referee also found that the canal-boat, after the issuance of the policy, proceeded on its voyage with the cargo, and on the 1st day of December, 1887, reached Hoffman's Ferry, ten miles from Schenectady, and left that point for Schenectady about 3 P. M. of that day, not leaking, with the cargo dry; that just previous to that time the canal had been covered with ice from one and one-half (1½) to two (2) inches thick, which had, just before the starting of the boat from that point, been broken to the width of twenty (20) feet by the government ice breaker, which had proceeded through

the canal from Schenectady to the ferry, and returned to Schenectady in advance of the canal-boat Taft.

The referee also found that the canal-boat was forced through the channel opened by the ice-breaker in which the broken ice floated, the edges of which channel was jagged and uneven, and was also forced through unbroken ice over one hundred (100) yards, immediately before arriving at the place where she finally stopped.

That the ice through which the boat was forced cut and gouged out portions of the outside planks, and made a hole or opening therein at about the water-line thereof, through which water from the canal leaked into the boat; that the leakage commenced before the boat reached her final stoppage, and continued to leak until about eleven o'clock in the evening of the first of December, when water had accumulated therein to the depth of about sixteen (16) inches.

The referee also finds that the water was taken from the canal where the boat lay and the breach repaired, but that the moistened corn commenced swelling, and by reason thereof the hull of said boat was burst, making a leak through which the water of the canal entered said boat, wetting all of the cargo except 1,239 bushels.

The referee further finds that, on the second day of December, the defendant's agents and servants took possession of the boat and cargo and removed the 1,239 bushels of dry corn, which they delivered to the plaintiff, who accepted the same, and on the third day of December, late in the afternoon, the defendant sold the remaining 6,761 bushels of wet corn lying in the boat at thirty-two and one-half cents per bushel, which was the best price defendant could obtain for the same, and which amounted in the aggregate to $2,197.75.

The referee also finds that the defendant paid over to the plaintiff the amount realized on the sale of the damaged corn, less certain charges, claimed to be deducted as *pro rata* freight and expenses of saving and caring for the cargo.

The referee also found as a fact that whatever the defendant did in caring for, saving and selling the cargo was assumed by it to be done under and by virtue and in pursuance of the provisions of the policy and for the benefit of all concerned.

Upon these facts the referee found as conclusions of law:

" That the defendant is not liable under said policy for the loss upon said cargo, caused by the wetting thereof as aforesaid.

" That the taking possession of said cargo, or the sale thereof by the defendant, after it had been informed and notified that such loss had been caused by and was in consequence of ice does not estop the defendant from availing itself of the defense that such loss was caused by and in consequence of ice.

" That the provisions contained in said policy, in the words following, to wit:   *   *   *   authorized and justified the sale of the wetted portion of said cargo by the defendant, as hereinbefore found, as the agent of the plaintiffs, and for the benefit of all concerned.

" That the plaintiffs have failed to establish either of the causes of action alleged in the complaint herein."

The plaintiff excepts to the findings of facts, but, as we have seen, there is no evidence before us, and we are forced to the conclusion that the evidence supports the findings of fact.

The case on this appeal must, therefore, be disposed of upon the plaintiff's exceptions to the referee's conclusions of law upon the facts found; and the exceptions of the plaintiff to the refusals to find his proposed conclusions of law upon these facts.

The plaintiff excepts to the conclusions of law found by the referee: That the defendant is not estopped from denying its liability under the policy by taking possession of the cargo after being informed and notified that such loss had been caused by ice.

As this policy expressly excepts the defendant from all liability from perils, loss and misfortunes arising from ice, and as the referee has found that the ice through which the canal-boat passed cut and gouged out portions of the outside planking and made a hole or opening through which the water from the canal leaked into the boat, thereby causing the injury to the cargo, the defendant would not, under the policy, be liable for such loss or injury, unless it did some act amounting to a waiver of that condition, or by its act in taking possession and selling the cargo, is estopped from denying its liability.

The plaintiff insists by taking possession of and selling the cargo, with the notice or knowledge that the damage was by ice, it waived that exception and became liable for all loss on the cargo.

The general rule seems to be that " If he (the underwriter) should proceed to sell the vessel with an express protest against the acceptance and a declaration that he did it for the benefit of the owner, his act would conclusively bind him. (*Peele* v. *Mer. Ins. Co.*, 3 Mason, 27 ; 2 Phillips on Ins., § 1693.) But this rule has not, in any case to which our attention has been called, gone so far as to hold the insurers liable where, by the express terms of the policy, they were required on authority to take possession as in this case. Here the policy provides : " Nor shall the acts of the insurers or their agents, in recovering, saving or disposing of the property hereby insured, be considered a waiver or an acceptance of an abandonment, nor as affirming or denying any liability under this policy, but such acts shall be considered as done for the benefit of all concerned, without prejudice to the rights of either party." It is, undoubtedly, the duty of the court to give effect to this provision in the policy.

If the contentions of the plaintiff were carried out to their legitimate sequences, it would put the insurers at their peril, if they undertook to interfere with the cargo, before the ultimate rights of the parties were determined ; and if they assumed to take possession of the vessel, they would thus be acknowledging their liability ; such a construction would effectually nullify this provision in the policy.

We think the fair construction of this clause in the policy is to give the parties thereto the fullest opportunity to preserve the injured or imperiled property from further loss and destruction, without by that act fixing or settling the ultimate rights of the parties, leaving those rights to be adjusted after a full and fair examination into the circumstances of the loss.

Of course, it cannot be urged from this condition in the policy, that it makes the defendant perfectly lawless, and enables it wantonly or negligently to destroy the insured property, to the injury of the plaintiff. But the insurer may, under that clause, take possession of and dispose of, and, as in this case of perishable property, we think sell the same, and not thereby waive the right to insist, on a further examination, that it was not liable under the policy. The plaintiff relies in support of his contention on *Carr* v. *Security Insurance Company* (109 N. Y., 504). The policy in that case insured against " actual total loss only."

In that case the insurers took possession of a stranded vessel, which was still afloat, or it was possible to put her afloat, and contracted with a wrecking company to bring her to port, which the wrecking company did, and the underwriters refused to pay the salvage for which she was sold under a decree in admiralty.

It was held that by that act the insurers had made her an "actual total loss," and were liable on the policy. That case seems clearly distinguishable in principle from the one at bar.

It was manifest, in that case, that the vessel was not an "actual total loss," on the contrary, it was afloat, but the insurers, by taking control of her and subjecting her to the expense of removal by the wrecking company, by which she was lost to the assured — as to him, she became, by the act of the defendant, a "total loss," and the company was held liable.

In *Titus* v. *Glens Falls Insurance Company* (81 N. Y., 419), the court lays down the rule that if the company, after knowledge of the forfeiture, by any negotiations, recognize the continued validity of the policy, or require the insured to do some act or incur some expense, the forfeiture is waived. But the facts found in this case do not show any such recognition of liability by the defendant. All it did, as appears from the findings, was to take care of and dispose of the property, as provided in the policy, "for the benefit of all concerned," which was expressly declared in the policy not to be a waiver. A waiver cannot be inferred from silence. The company was not bound to do or say anything to make the forfeiture effectual.

It may wait until the claim is made under the policy and then allege the forfeiture in defense of a suit on the policy. (*Titus* v. *Glens Falls Ins. Co*, 81 N. Y., 419.)

It can hardly be maintained, I think, that by taking possession of the property for the benefit of all concerned, the defendant can be charged with importing into the contract a provision, in effect insuring against damage by ice, when the policy expressly exempts the insurers from liability resulting from that cause.

If there is any mistake or carelessness of the agent in holding this property, it is not available in an action to enforce this policy. We see no principle in the doctrine of estoppel which made the defendant liable for damage by ice, which is, by the policy, expressly

exempted from the risk, simply because it took possession and disposed of this cargo for the benefit of all concerned, under the language of the policy. (Sanders v. Cooper, 115 N. Y., 288.)

Nor do we think the defendant, under the findings and exceptions in this case, can be charged with a conversion of this cargo, or a wrongful retention of the same, under the second cause of action set out in the plaintiff's complaint.

The referee finds that it was provided in the policy of insurance that in case of loss or misfortune, it should be the duty of the captain and crew of the boat, or those having command, to use the utmost diligence and attention to save the property, until some agent of the defendant should arrive, and upon his arrival to assist him in the care and saving of the property, and that negligence so to do would render the policy void; that there could be no abandonment of the subject insured, and that the acts of the insurers or their agent in recovering, saving or disposing of the property insured thereby, should not be considered as a waiver or acceptance of an abandonment, or as affirming or denying any liability under said policy, but that such act should be considered as done for the benefit of all concerned, without prejudice to the rights of either party.

The referee finds that the plaintiff was present when the defendant took and disposed of the cargo, and made no objections, and that whatever the defendant did in caring for, saving and selling the cargo, was assumed to be done by virtue, and in pursuance of the provisions of the policy and for the benefit of all concerned. It will be seen that the right and duty of the defendant to take and dispose of the cargo did not alone depend upon the defendant's liability as insurers for the value of the cargo, but that right attached in case of loss or misfortune to the cargo.

Thus, while the ultimate rights and liabilities of the parties under the policy remained undetermined, the defendant was charged with the duty of recovering, saving and disposing of the property insured for the benefit of all concerned.

This clearly gave the defendant the right of possession, and, under the exercise of that right, he took possession of and delivered to the plaintiff the uninjured part of the cargo, which was accepted, the balance of the cargo, the referee finds, and we think properly,

the defendant sold under and in pursuance of the authority given in the policy, of saving or disposing of the property, and that in doing that the defendant acted as the agent of the plaintiff.

We find no error committed by the learned referee in his conclusions of law from the facts found.

The judgment must, therefore, be affirmed, with costs.

LEARNED, P. J., and LANDON, J., concurred.

Judgment affirmed, with costs.