INSURANCE CO. OF NORTH AMERICA v. CANADA SUGAR-REFIN-
ING CO., Limited.

(Circuit Court of Appeals, Second Circuit.    April 19, 1898.)

No. 95.

1. MARINE INSURANCE—PROFITS—TOTAL LOSS.
   Under a contract of insurance of the profits on a cargo of sugar "against total loss only" there is no actual total loss of profits where any part, however small, of the cargo, is saved, and reaches the owner in condition to earn a profit; and in such case no recovery can be had.

2. SAME—CONSTRUCTIVE TOTAL LOSS—MOIETY RULE.
   In the United States the owner may abandon ship or cargo, and treat the loss as constructively total, when the damage exceeds 50 per cent. of the total value.

3. SAME—ABANDONMENT.
   In cases of constructive total loss, abandonment is indispensable to recovery of insurance, except when it could not possibly be of benefit to the insurer.

4. SAME.
   Where insurance is upon the profits of a cargo, and not upon the cargo itself, a partial loss cannot be converted by abandonment into a constructive total loss.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel in personam by the Canada Sugar-Refining Company against the Insurance Company of North America to recover under a policy of marine insurance on profits on a cargo of sugar. The circuit court rendered a decree for libelant (82 Fed. 757), and the respondent has appealed.

Clifford A. Hand, for appellant.
Wilhelmus Mynderse, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge.    The libel in this cause was filed to recover upon a contract of insurance with the libelant, evidenced by a certificate dated April 29, 1893, delivered by the appellant at Philadelphia, whereby the latter caused to be insured under its open policy No. 117,407, against perils of the sea, "$15,000 on profits on cargo of sugar against total loss only, valued at sum insured, shipped on board the British ship John E. Sayre at and from Iloilo to Montreal." The policy contains the usual clause making the insurer responsible only for so much as the amount of prior insurance may be deficient towards fully covering the property at risk.    The sugar was owned by the libelant, consisted of about 2,460 tons, was of the value of about $181,000, and was insured for $166,145 by the Atlantic Mutual Insurance Company.    The insurance of the Atlantic Mutual Insurance Company covered the original cost price of the sugar to the libelant and an advance in market price since its purchase by the libelant; and when the insurance with the appellant was effected there had been a still further advance in market price, so that the insurance on profits really

covered a profit which had accrued to the libelant when it was effected. The appellant had been informed by the libelant of the insurance upon the cargo.    July 6th the ship stranded on the coast of Newfoundland, and ultimately became a total wreck.    The master at once made arrangements with local salvors for saving and storing the cargo, agreeing to give them one-half saved.    The salvors removed from the ship to their own vessels all the cargo capable of being saved.    The master was about to arrange for the transportation to Montreal of the part not going to the salvors, when the Atlantic Mutual Insurance Company, which had meantime been informed of the disaster, intervened, and took entire control.    That company carried out the agreement made by the master with the salvors, paying them an equivalent in lieu of one-half of the sugar saved, and caused the sugar saved to be reconditioned, and shipped to Montreal on the steamer Tiber, and delivered upon arrival there to the libelant.    The expenses incurred by the Atlantic Mutual Insurance Company for reconditioning and forwarding the cargo and adjusting the claims of the salvors amounted to $10,167.    That company also paid the ocean freight upon the quantity of cargo saved.    It adjusted the loss with the libelant by paying the equivalent of the whole amount of its policy less the insured value of the sugar delivered to the libelant.    The cargo delivered to the libelant consisted of 307 tons of dry sugar and about 26 tons of wet, and was of the value of about $20,000.    There was no notice of abandonment given to the appellant.

Upon these facts the court below was of the opinion that there had been a toal loss of the profits insured within the meaning of the contract, and decreed accordingly for the full amount of the insurance.

The subject of insurance was not the libelant's cargo of sugar, but the profits, and the total loss to which the liability of the underwriter was restricted by the contract of the parties was a total loss of profits. That there was no actual total loss of profits is entirely clear.    Insurance of profits of a cargo is an engagement by the underwriter that the goods shall not be prevented by the perils insured against from arriving at their destination in a condition for earning profits; and in a valued policy the parties fix for the purpose of adjusting a loss the sum which the cargo would earn upon safe arrival by way of profits. Under an insurance of profits, a loss of cargo carries with it, of course, the loss of the profits, at least is prima facie evidence of their loss; and under a valued policy the assured is entitled to recover the whole insurance upon proof of a total loss of the goods, without proof that any profits would have been made if the goods had arrived.    Barclay v. Cousins, 2 East, 544; Insurance Co. v. Coulter, 3 Pet. 222; Mumford v. Hallett, 1 Johns. 439; Fosdick v. Insurance Co., 3 Day, 108; French v. Insurance Co., 16 Pick. 397.    "If a part of the goods only are prevented from arriving, it constitutes a partial loss of those interests, according to the construction put upon it in the United States."    2 Phil. Ins. § 1503.    In other words, there can be no actual total loss of profits when part of the goods arrive in condition to earn a profit (Loomis v. Shaw, 2 Johns. Cas. 36), notwithstanding a greater part have been destroyed by the perils insured against (Waln v. Thomp-

son, 9 Serg. & R. 115).    In such a case, under a valued policy, the insured can only recover of the underwriter the valuation less the profits to be accounted for.    French v. Insurance Co., supra.    It is only in a case of total loss that there is any difference between an open and valued policy.    Marsh. Ins. 268, 618; Batem. Com. Law, § 1129. In the present case the value of the cargo saved was comparatively insignificant, being only about $10,000, after deducting salvage and expenses, or alternatively something over 150 tons of dry sugar out of 2,460 tons; but, part having been saved, and actually received by the libelant, there was not an actual total loss.    A loss of part of the cargo is a proportional loss on profits.

The question then arises whether the libelant was entitled to recover upon the theory of a constructive total loss.    A constructive total loss is one where the loss, though not actually total, is of such a character that the assured is entitled, if he thinks fit, to treat it as total by an abandonment.    A constructive total loss of cargo may arise by the loss of the ship under circumstances amounting to the destruction of the contemplated adventure, when no part of the cargo can be forwarded by a substituted ship except at a cost beyond the value of the goods.    So, also, it may arise if the damage to the goods, though repairable, cannot be repaired except at an expense greater than their value when repaired, and is thus impracticable from a business point of view.    There is also in the United States a conventional rule, originally adopted because of its convenience and certainty, which authorizes an abandonment of ship or cargo when the damage exceeds a moiety of the value, and a recovery as for a total loss.    An abandonment is indispensable in all cases of constructive total loss, except in those where it could not possibly be of any benefit to the insurer.

By the later authorities it is settled that under a policy insuring a ship or cargo against "total loss only" the assured is entitled to recover upon proof of a constructive total loss.    Adams v. Mackenzie, 13 C. B. (N. S.) 422; Heebner v. Insurance Co., 10 Gray, 131; Greene v. Insurance Co., 9 Allen, 217; Burt v. Insurance Co., 78 N. Y. 400; Carr v. Insurance Co., 109 N. Y. 504, 17 N. E. 369; Snow v. Insurance Co., 119 Mass. 592.    It is a reasonable intendment that when an underwriter offers to indemnify the insured against a "total loss" he means to be understood to include any loss which the latter may justifiably treat as total.    If he contemplates a more limited liability, he can protect himself by insuring against actual or absolute total loss.    It does not necessarily follow that these words are to be given the same meaning in a policy upon profits as in a policy upon cargo; and our opinion is that they cannot have the same meaning.    How can there be a constructive total loss of profits?    In all cases where the destruction of the voyage or the damage to the cargo renders it impracticable, because the outlay will exceed the returns, to go on with the adventure, there is an actual total loss of profits, though it may be there is only a constructive total loss of the cargo.    The moiety rule cannot apply, because the profits cannot be separated from the goods

themselves, and an abandonment is ordinarily so impracticable that the rule cannot be supposed to have entered into the contemplation of the parties when making their contract. It has never been decided that in case of an insurance of profits an actual partial loss of the profits can be made total by abandonment, and the commentators incline to the contrary view. Mr. Phillips says:

"On the whole, it does not seem that the rule of constructive loss of over fifty per cent. of the value is applicable to a policy on profits in favor of the owner of the goods under any circumstances." Phil. Ins. 1656.

Prof. Parsons, after intimating that an actual partial loss of profits cannot be made constructively total by abandonment, uses this language:

"It would seem, therefore, that the fifty per cent. rule would not apply to an insurance on profits unless the insurer (the assured) should waive his right to abandon the goods, and, treating the loss of them as partial, abandon the profits separately. In theory this might be possible, but it would be attended with some difficulties, and can hardly be considered as in fact practicable." 2 Pars. Mar. Ins. 170, 171.

If there can be no constructive loss of profits the words "against total loss only" in an insurance upon profits can only refer to an actual total loss. They certainly cannot refer to a partial loss. They can have no effect whatever, if, as has happened here, the assured can retain part of the profits, and yet recover as though all have been lost.

The present contract, in view of the extrinsic facts, was intended to be, in substance, a second insurance on the goods themselves, "another way of valuing the goods" (Tom v. Smith, 3 Caines, 247), to cover the value represented by the advance in market price, and not adequately protected by prior insurance. See Ionides v. Pender, L. R. 9 Q. B. 531–536. Indeed, it is customary at the place where this contract was made to insure profits under the general denomination of "goods." Pritchet v. Insurance Co., 3 Yeates, 461. If the cargo itself, instead of the profits, had been the interest insured, the libelant would have been indemnified only to the extent that the prior insurance might prove insufficient. Insurance is a contract of indemnity, and cannot extend to cover the loss in excess of the real loss; and, even under a valued policy, where there is a prior insurance, the assured cannot recover upon it more than will, with what has been received from the prior insurance, make up his whole loss. Craig v. Murgatroyd, 4 Yeates, 161; Watson v. Insurance Co., 3 Wash. C. C. 1, Fed. Cas. No. 17,286; Stevenson v. Insurance Co., 54 Me. 71; Pleasants v. Insurance Co., 8 Cranch, 55. The property at risk was really the cargo, because the profits were merely an excrescence of the goods; and, if the contract had not been "against total loss only," the appellant would have been liable only for the deficiency. It cannot be that the insertion of these words were intended to enlarge the extent of the appellant's liability. They were meant to restrict it. They were used in view of the doctrine, expressed by the commentators upon insurance, that there cannot be a constructive total loss of profits.

We think the insurance was placed upon the profits instead of upon the cargo directly, and restricted to a total loss only, to save any question as to the liability of the appellant for a partial or constructive total loss; otherwise there would have been no occasion for naming that interest, and the insurance would have been upon the cargo itself.

By the decree of the court below the libelant has been awarded a recovery, which, if collected, would put into its pocket the profits realized on the cargo saved, in addition to the amount of the respondent's policy. Irrespective of this consideration, and because it has received the profits on a part of the cargo, we are of the opinion that there has not been a total loss of profits within the meaning of the contract.

The decree is reversed, with costs, and with direction to dismiss the libel.